[Civ. No. 2356.   Third Appellate District.—December 24, 1921.]

BEN WATSON, Respondent, v. B. L. FOUCH et al., Board of Trustees, etc., Appellants.

[1] MUNICIPAL CORPORATIONS—DISINCORPORATION OF CITY OF SIXTH CLASS—SIGNERS OF PETITION—VOTERS AT LAST "MUNICIPAL ELECTION"—CONSTRUCTION OF ACT.—An election for the incorporation of a town into a municipal corporation of the sixth class is a "municipal election," within the meaning of section 1 of the act of 1895 and amendatory acts providing that the legislative body of such a corporation shall upon receiving a petition for disincorporation signed by not less than half of the qualified electors as shown by the vote cast at the last "municipal election" submit to such electors the question of disincorporation.

[2] ID.—INCORPORATION ELECTION—MUNICIPAL ELECTION.—In view of sections 2 and 3 of the Municipal Incorporation Act (Stats. 1899, p. 13), which provide that when an election is called to determine whether or not a certain territory shall become a municipal corporation, the call shall also require the voters to cast their ballots at such election for persons to fill the various elective municipal offices of such proposed municipality, such election is clearly a "municipal election" held in such city, within the meaning of section 1 of the act allowing municipal corporations of the sixth class to disincorporate, regardless of any other reasons for holding it to be such election. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Colusa County. Ernest Weyand, Judge. Affirmed.

The facts are stated in the opinion of the court.

Seth Millington, Jr., and Frank Freeman for Appellants.

A. C. Huston and C. D. McComish for Respondent.

HART, J.—This is an appeal by the defendants from a judgment awarding a peremptory writ of mandate directed to the defendants, as members of the board of trustees of the town of Williams, Colusa County, California, compelling them to call an election for the disincorporation of said town of Williams.

The findings, which follow the allegations of the complaint, show the facts of the controversy which is the subject of this litigation to be, in substance, as follows:

The town of Williams is a municipal corporation of the sixth class, having been organized under and by virtue of the Municipal Corporation Act of California. The board of trustees of said town constitutes the legislative or governing board or body thereof, and the defendants are the regularly elected and duly qualified trustees of said town and members of said board. The petitioner is and was, at all the times herein mentioned, a resident and property owner and taxpayer of said town.

On the first day of October, 1920, a petition, in due legal form, and signed by 150 or more qualified electors, which number of electors constituted "more than half as many electors as voted at the last municipal election in said town,"

was presented to said board of trustees, the defendants here-in, asking that an election be called for the purpose of submitting to the electors of said town the question of disincorporating the same. After the filing of said petition with said board of trustees, and on the sixth day of December, 1920, said board, after canvassing the same, by a vote of the members of said board, and upon a motion for that purpose duly made and seconded, granted the prayer of said petition, and ordered an election to be held on January 18, 1921, on the said question of disincorporating said town of Williams. After so ordering an election, and at a meeting held in the said month of December, and prior to the institution of this action, the said board of trustees, by a vote of said board, rescinded the said action of December 6, 1920, calling an election for the purpose stated, "and did then and there refuse, and thereafter refused, and still continue to refuse to call such election, and said board refuse to take any further action in relation to said election, since said last named day."

It was stipulated at the trial that the only election ever held prior to the commencement of this proceeding in *man-damus* affecting or appertaining to the town of Williams as a municipal corporation was the election at which the electors of said town voted upon the question of the incorporation of said town as such a corporation.

The determination of the controversy presented here is dependent upon the construction of certain provisions of the act of 1895 (Stats. 1895, p. 115) and subsequent acts amendatory thereof in relation to the disincorporation of municipal corporations of the sixth class. (See Stats. 1897, p. 17; Stats. 1899, p. 13, and Stats. 1915, p. 982; Henning's Gen. Laws, p. 1937.)

The provisions of the law prescribing the method of disincorporating a city of the sixth class are contained in section 1 of the act above referred to. So much of said section as is necessary to be considered in the determination of this appeal reads as follows:

"A municipal corporation of the sixth class may disincorporate after proceedings had as required in this act. The council, board of trustees, or other legislative body of such corporation shall, upon receiving a petition therefor, signed by not less than half of the qualified electors thereof, as

shown by the vote cast at the last municipal election held therein, submit to the electors of such corporation the question whether such municipal corporation shall disincorporate.''

The appellants, in the court below and here, challenge the legal sufficiency of the petition filed by the respondent with the board of trustees for the disincorporation of the town of Williams, and this constitutes the single point presented and discussed in the briefs. The contention of the appellants is that the election at which was submitted the proposition for the incorporation of the town of Williams was not a ''municipal election,'' within the meaning of that phrase as it is employed in the statute in question; that the ''municipal election'' referred to in the statute is an election at which officers are elected in and for a municipality and held subsequent to the act of incorporating a city or town as a municipality. It is hence argued that the election at which the electors of the town of Williams voted upon and carried the proposition of incorporating said town, being the only election ever held pertaining to said town with respect to its corporate character (no municipal election ever having been held therein after the incorporation thereof), there was not, and could not be, at the time of the preparation and filing of the petition for the disincorporation of said town, a legal basis or standard for such a petition or for determining whether the requisite number of qualified electors of said town have or have not signed the petition asking for the disincorporation thereof.

The precise question presented here is new, so far as we are advised by the briefs or by such independent investigation as we have been able to make. The solution of the controversy would appear, upon first blush, to be fraught with no little difficulty; yet, upon full reflection and a consideration of the principles which should govern in determining a question which, like the one submitted here, in no small measure involves the fundamental right of petition and in full measure the right conferred upon the citizens of a particular community themselves to say whether they shall or shall not be subject to the burdens and the mandates of a local or municipal government, the solution of the problem is not so difficult as it might appear to be.

It may be conceded that the election for the incorporation of a town under the provisions of the general Municipal Corporation Act is not, in the stricter sense in which the phrase "municipal election" is usually understood, a municipal election, since such an election is generally one held within and for the purposes of the municipality after its organization as such; still no sound reason can be assigned for holding that the phrase "municipal election" should be subject to a hard-and-fast rule of interpretation and its meaning thus limited to that in which it may ordinarily be understood in a case, such as this, where the right of the electors of a particular locality to determine for themselves whether they shall or shall not be subject to local self-government is made contingent upon what such interpretation may be. The rule is, it is true, that, in the organization of municipal corporations, either under the constitution, by way of a freeholders' charter, or under the Municipal Corporation Act, the procedure therefor as prescribed must be followed with substantial strictness—that is to say, that any substantial departure from the procedure so prescribed would vitiate the proceedings looking to the framing of a freeholders' charter or the organization of the corporation. As to freeholders' charters, the mode prescribed by the constitution for the framing thereof is the measure of the power, and the same is, of course, true to a very great extent in the organization of towns into municipalities under the statute, although as to the latter it has been said that its provisions "are to be construed liberally for the accomplishment of the object and promotion of justice." (*People* v. *Gunn*, 85 Cal. 238, 246 [24 Pac. 718].) But this is not a case involving the framing of a freeholders' charter or the incorporation of the inhabitants of a town for the purposes of local government under the general law prescribing the mode for effecting such incorporation, although, as to the latter, no doubt the rule of construction which we think should obtain in the present case ought, with equal reason, to apply. As declared, the question here is whether, upon an extremely technical construction of a statute, such as the one involved here, the electors of a certain local territory shall be denied the opportunity of exercising the right, specially conferred upon them by the legislature, to relieve themselves of what it may well be conceived that

they have found is an unnecessary burden fixed and resting upon them by the establishment and maintenance of a municipal corporation. In such a case, we think, the rule ought to be, if it can be applied without disturbing or frustrating any of the essential purposes of the statute, and it be necessary to the exercise by the electors of such right, that the language of the statute should be given a liberal construction. This proposition would, it seems, logically follow from these considerations: The legislature, acting within the scope of its constitutional power, has ordained that, as to the matter of the organization of the inhabitants of small communities into local governments, with power to adopt and enforce certain police, sanitary, and other regulations appropriate to municipalities, the people themselves of such communities shall have the sole and exclusive say. To them is exclusively committed the power and the right to determine whether they shall or shall not be organized as a municipal corporation. In giving them this power, the legislature, while with eminent propriety pointing out with sufficient specificness how they shall employ or invoke it, cannot be assumed to have intended so to hamper its exercise by restrictive provisions or omission to make certain provisions as to the procedure to be followed as practically to destroy the right and the power so given them. If, then, there be some doubt from the language of such a statute as to the mode of exercising the right and the power, such a construction should be given the enactment as will facilitate a free and full exercise of the rights of the electors under the law.

As to the statute involved in this controversy, it is perfectly clear that the central or all-important object of the provision thereof as to the nature or character of the petition to be filed for disincorporation is to impart to those only who are qualified electors within the limits of the municipality eligibility to sign such a petition and to fix the number of such electors to sign the same. Important, it is true, that, to warrant the calling of an election for disincorporation, the essential facts referred to should exist and be properly found, but if they do exist, then the essential foundation or jurisdictional prerequisite for calling the election—the very object of the statute—exists. We are not thus to be understood as saying that the means pointed out

by the statute for determining those facts should not be followed. What we desire to emphasize is the proposition that the real *punctum saliens* of the provision is, as suggested, in the requirement that none but qualified electors of the municipality are legally entitled to sign the petition and the further requirement as to the number of such electors who must sign the same, and that the provision as to the means of ascertaining whether these facts exist constitutes merely the evidentiary method of ascertaining those facts; that, in view of these considerations, and if reasonably warranted by the language or the general context of the statute, or by a consideration of the statute by the light afforded by the paramount purpose for which it was enacted, a construction thereof which will have the effect of enabling the electors to exercise their rights in a case of this character should be given rather than a construction which will prevent such electors from exercising such rights. In other words, if the ascertainment of the facts essential to clothing the board of trustees with authority or jurisdiction to call the election may be obtained by any means fairly and reasonably afforded by the language of the statute, then that method for the ascertainment and finding of such facts should be resorted to rather than that the manifest will of a majority of the electors of the municipality favorable to disincorporation shall be thwarted.

[1] While, as before suggested, an election held under the general Municipal Corporation Act for the purpose of incorporating a town, or its inhabitants, into a municipality, may not be, in the stricter view, as ordinarily entertained and expressed, a municipal election, yet, if it is not such an election, it must be admitted that there is no characterization appropriate to such an election. We are of the conviction, though, that it must be so regarded; for it is the essential or actually the organic act or step, under the Municipal Corporation Act, for organizing a municipal corporation, and its only purpose is strictly municipal in character—that is to say, its sole or only object is to incorporate the inhabitants of a town into a municipal corporation. It perhaps may properly be characterized, in a legal view, as a nondescript in the election system of the state, and still in characteristics or in its purposes it more nearly resembles a municipal election than any other election at which

electors of the state or any of its subdivisions are thus given an opportunity to express their will or their views upon public matters, except, of course, an election strictly municipal in character. How is it to be characterized if it be not a municipal election? If not a municipal election, what is it? It is certainly not a county election; nor, while such an election is a "state affair," since municipal corporations are mere agencies of the state authorized to exercise within their respective boundaries, to a limited extent, certain powers of the state, can it be called a "state election" either in the common or the juridical signification of that phrase. No one will say that it is either a county or state election. Since, in purpose and effect and form, it bears a close analogy to a municipal election, it is in this case only reasonable to hold, as we do hold, that, for the purposes of the act under consideration, the election held for incorporating the town of Williams was a municipal election.

That the above construction is not only just but is not inconsistent either with the general spirit or a reasonable view of the language of the statute, is, it seems clear to us, supported by these considerations which arise from the act itself, viz.: 1. That there is nothing in the act interdicting the filing of a petition to disincorporate at any time after incorporation has been effected. This right, so far as authority therefor is concerned, exists at all times until such an election has been had, and proceedings for that purpose before a municipal election has been held after incorporation would be abortive if it were necessary to sustain the construction insisted upon by appellants. 2. That the provision does not say that the test of the validity of the petition is the vote cast "at the last *general* municipal election," which language, if used in lieu of that employed, might warrant the implication that the election which it was intended should furnish the basis for determining whether the petition was signed as required should be a municipal election held after the act of incorporating the town had been effected.

We think that, for the reasons stated, the judgment should be affirmed, and it is so ordered.

Finch, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 20, 1922, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing is denied.

The Municpal Corporation Act [Stats. 1883, p. 93] provides that when an election is called to determine whether or not a certain territory shall become a municipal corporation, the call shall also require the voters to cast their ballots at such election for persons to fill the various elective municipal offices of such proposed municipality; that on the canvass of the votes thereat by the board of supervisors of the county, if the majority is for incorporation, the board shall declare such territory duly incorporated and shall also declare the persons receiving respectively the highest vote for such offices to be duly elected thereto, and that upon the filing of a copy of the order in the office of the Secretary of State, the persons so declared elected shall be entitled to enter upon the duties of their respective offices. (Secs.. 2 and 3, Municipal Corporation Act, Stats. 1889, p. 371.)   [2] In view of these provisions such election is clearly a "municipal election" held in such city, within the meaning of section 1 of the act allowing municipal corporations of the sixth class to disincorporate (Stats. 1899, p. 13), regardless of any other reasons for holding it to be such election.

Shaw, C. J., Richards, J., *pro tem.*, Waste, J., Wilbur, J., Lawlor, J., and Shurtleff, J., concurred.