[Civ. No. 4752. Fourth Dist. Nov. 30, 1953.]

E. A. BOHN et al., Appellants, v. THE MAYOR AND CITY COUNCIL OF THE CITY OF FONTANA et al., Respondents.

O'Connor, Eckhardt & Fick for Appellants.

Henry F. Rager for Respondents.

GRIFFIN, J.—On October 3, 1952, petitioners, as qualified electors of the city of Fontana, filed a petition for a writ of mandate against the mayor and city council of that city and the members thereof, as individuals, alleging generally that the city of Fontana was incorporated as a sixth-class city on June 25, 1952; that subsequent thereto and prior to September 2, 1952, a petition was circulated requesting disincorporation, and that said petition was presented to said body; that the petition was signed by 1,009 qualified electors of the city of Fontana; that 1,009 qualified electors are more than 20 per cent of the qualified electors of said city; that the city council refused to submit at a special election the question of whether or not the city should disincorporate.

It should be here noted that less than two years elapsed

between the incorporation of said city and the circulation of the petition, and that it is not alleged that said petition was signed by not less than 20 per cent of the qualified electors as shown by the number qualified at the last state general election.

These are the pivotal points presented on this appeal and the determining factors which caused the trial court to sustain the demurrer and allow petitioners to amend, and from such refusal to amend a judgment of dismissal followed.

█ It is respondents' main contention, in support of the trial court's ruling, that section 1702 of the Elections Code was applicable and prevented the circulation of such petition within the two-year period. It provides:

"Before circulating any petition relating to the annexation of territory by a city, . . . the dissolution of a city . . . the proponents thereof shall publish a notice of intention so to do, which notice shall be accompanied by a printed statement. not exceeding five hundred words in length of the reasons for the proposed petition.

*"No petition for the dissolution or disincorporation* of a city . . . may be circulated until after the expiration of two years from the date that such city . . . was incorporated."

It is petitioners' claim that these disincorporation proceedings provided for in the Government Code, title 4, division 2, part 1, chapter 6, comprising sections 34700 to 34735, provides a complete procedure for disincorporation of cities of the sixth class; that petitioners proceeded thereunder; that said Government Code sections made no reference to any time limit in this respect, and that therefore said section 1702 of the Elections Code had no application to the provisions of the Government Code, citing Report of Code Commissioners, Legislative Session 1947, page 9; also Report of Code Commissioners, Legislative Session 1945; and the Draft of Government Code published by California Codes Commission February 23, 1948; also *Mintzer* v. *Schilling,* 117 Cal. 361 [49 P. 209]; *Taylor* v. *Burks,* 6 Cal.App. 225 [91 P. 814]; *Frederick* v. *City of San Luis Obispo,* 118 Cal. 391 [50 P. 661]; and *Watson* v. *Fouch,* 55 Cal.App. 765 [205 P. 58].

The argument is that this procedure set forth in the Government Code was originally enacted in 1895 (Stats. 1895, ch. 125 § 1, p. 115 et seq.); that it has since been amended several times in minor particulars and that at no time was any time limit fixed in any of the amendments, and that the Legislature has never seen fit to make its provisions dependent

upon any other provisions of law; that the Elections Code procedure has continuously been treated as part of the general procedure for the enactment of initiative measures by all cities and other local government bodies, citing 30 California Law Review, page 1, Title *"Municipal Home Rule in California"* by Professor John C. Peppin; that it was the intention of the Legislature by the act of 1895 and its amendments to afford to sixth-class cities a special readily available and easily used procedure for its disincorporation; to give them a special opportunity to divest themselves of incorporated status if after adopting it they deem it undesirable; that the provisions of the Elections Code, division 4, chapter 3, article 1, sections 1700 to 1723, inclusive, have no application to the disincorporation of sixth-class cities under the Government Code, as manifested by the legislative history of the two enactments, citing 23 California Jurisprudence, page 237, section 34; 18 California Jurisprudence, page 945, section 228; and section 34700, Government Code.

In this connection it is argued that the chapter and section titles of the two acts, being a part and parcel of the enactment, are integral parts of the code itself, and when examined illustrate the contention advanced by petitioner; that the specific and special provisions of the Government Code control the general provisions of the Elections Code; that if all the provisions of the Elections Code were brought into and applied with the procedure prescribed in the Government Code, they, not being *in pari materia,* disincorporation of a city of the sixth class would be impossible, citing *In re Forthmann's Estate,* 118 Cal.App. 332 [5 P.2d 472]; *Gonzales* v. *Superior Court,* 3 Cal.2d 260 [44 P.2d 320]; and 23 California Jurisprudence, page 772, section 147.

The "Division, part, chapter, article, and section headings do not in any manner affect the scope, meaning, or intent of the provisions of this code." (Elec. Code, § 6.)

Division 11, part 2, chapter 2 of the Elections Code provides for the "General Regulations Governing Elections in Fifth and Sixth Class Cities." Section 9703 thereof provides:

"In all respects, not otherwise provided for in this chapter, municipal elections shall be held and conducted in accordance with the provisions of this code governing elections generally, so far as they may be applicable."

Section 34050 of the Government Code provides:

"Elections in cities organized pursuant to Division 2, or its predecessors, shall be held pursuant to Part 2, Division 11

of the Elections Code, except as otherwise specifically provided.''

Section 34051 of the Government Code provides who are eligible to vote, and section 650 et seq. of the Elections Code provide for the appointment of election officers. Provisions in reference to the manner of voting is only to be found in the Elections Code. The duties of the city clerk in reference to the examination of the petitions and certification of the results thereof is found only by reference to the Elections Code.

Accordingly, the procedure set up in the Government Code pertaining to the disincorporation of cities of the sixth class, is not entirely complete in itself since it must refer back to those sections of the Elections Code to complete its full operation.

Section 1702 of the Elections Code, in its original enactment, did not contain the provision contained in the paragraph providing that no petition for the disincorporation of a city of the sixth class may be circulated until after the expiration of two years from the date such city was incorporated. This paragraph was added in 1939. (Stats. 1939, ch. 26, p. 93.) It is of interest to note that this same paragraph has been removed from that section and set over into the Government Code, now section 34701.1, without any change. (Stats. 1953, ch. 315, effective September 9, 1953) which, if petitioner's argument is correct, would not now require any time limit before petitions for disincorporation under the Elections Code could be circulated, but would require it under section 34701.1 of the Government Code in relation to disincorporation of cities of the sixth class only. Such an interpretation would appear to be incongruous with the intent of the Legislature and the true intention would appear to be that the Legislature at all times since the enactment of that provision into our laws pertaining to disincorporation of cities meant that at least two years must expire before the circulation of petitions for such disincorporation was permissible, and that there was no substantial change in the law, but merely the placing of the law from one code to another.

It is well settled, as stated in *In re Porterfield*, 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675], where provisions in the Labor Code and the Business and Professions Code were being considered, that ''The code separation is for convenience only. It is a well-recognized rule that for the purpose of statutory construction, the codes are to be regarded as blending into each other and constituting but a single statute.''

(Citing cases.) See, also, *People* v. *Darby*, 114 Cal.App.2d 412 [250 P.2d 743], where it is said: "The two codes (the Education Code and Government Code) are not antagonistic laws, but both are parts of the state's jurisprudence and must be harmonized and effect given to every section. . . . What the legislature says is the law, wheresoever it be found." See, also, *Guardianship of Thrasher*, 105 Cal.App.2d 768 [234 P.2d 230]; and *Southern California Jockey Club, Inc.* v. *California Horse Racing Board*, 36 Cal.2d 167 [223 P.2d 1], where it was held (quoting from the syllabus) that "The codification of the horse-racing law (placing it in the Business and Professions Code) was presumably not intended as a change in the law." In *Webster* v. *Zevin*, 77 Cal.App.2d 855 [176 P.2d 960], it was said: "Transplanting the section to the Vehicle Code without change in its terms furnishes no ground for an interpretation different from what would manifestly be given it as a Civil Code provision."

If we follow the usual and general rules of statutory construction the two codes can be harmoniously construed together in this respect. Thus proper effect can be given to Elections Code section 1702 and the other provisions of the Elections Code necessarily applicable, and to the provisions of the Government Code in respect to the disincorporation of municipalities of the sixth class.

We therefore conclude that the demurrer to the petition for the writ could have been properly sustained without leave to amend in this respect. It therefore becomes unnecessary to determine the other issues presented. However, an allegation that the petition was signed by not less than 20 per cent of the qualified electors, as shown by the number qualified at the last general state election, was essential for a proper compliance with section 34701 of the Government Code and not that it was signed by more than 20 per cent of the qualified electors of said city. (Elec. Code, §§ 23, 950.) Section 950, *supra*, defines a general election. However, this allegation would have been subject to a proper amendment.

The fact that there was no general state election held throughout the state between the date of incorporation and the time when the petition was circulated adds additional reasoning why the Legislature may have intended that a two-year period must elapse between those occasions so that such a proper calculation may be made as to the sufficiency of the petition. (*Watson* v. *Fouch*, 55 Cal.App. 765 [205 P. 58].)

The claim that the members of the city council named individually as respondents, were not proper or necessary parties to the action has merit. (*Taylor* v. *Burks*, 6 Cal.App. 225 [91 P. 814].) However, in view of the previous determination, further consideration of this point is unnecessary.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 27, 1954.