[Civ. No. 31661. Second Dist., Div. One. Apr. 11, 1968.]

FEDERAL EMPLOYEES DISTRIBUTING COMPANY, Plaintiff and Respondent, v. FRANCHISE TAX BOARD, Defendant and Appellant.

938

Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, Edward P. Hollingshead and Walter J. Wiesner, Deputy Attorneys General, for Defendant and Appellant.

Butterworth & Waller and Edward L. Butterworth for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment which in effect ordered a refund of franchise taxes paid by Federal Employees Distributing Company, a corporation (hereinafter called Fedco), in the amount of $67,213.71.

In a complaint filed May 18, 1965, plaintiff sought to recover a judgment for $67,213.71 from the Franchise Tax Board for and because of illegally assessed and collected taxes.

Fedco was organized in 1949 under the General Nonprofit Corporation Law[1] and has its principal office in Los Angeles County. During the years in question, 1957-1964, it operated stores in Southern California and sold consumer goods to its members and their guests. The members of Fedco pay $2 at the time they join and receive at such time a membership certificate. This fee is the only payment required by Fedco

---

[1]Corporations Code, sections 9000 and 9002, provide as follows:
"§ 9000. This part shall be known and may be cited as the General Nonprofit Corporation Law."
"§ 9002. The *provisions of the General Corporation Law*, Division 1 of this title, *apply to corporations formed under this part*, except as to matters specifically otherwise provided for in this part."

from its members; there is no renewal fee, nor are there any dues or other periodic payments. *The single fee is Fedco's sole source of paid-in equity capital.* At the start of Fedco's business in 1949 approximately 2,000 federal employees contributed $4,000 in capital for the operation of the business— no other capital funds were provided. The purpose of the members was to organize and provide a merchandising company which would enable the members to buy merchandise at competitive retail prices.

*During the trial counsel for the Franchise Tax Board conceded that the membership fees of $2 each represented Fedco's sole source of paid-in equity capital.*

Since 1949 the receipts from the sale and issuance of Fedco memberships have been and are carried on its books and records as capital. There are two main classes of membership, one regular and one associate; the regular memberships are sold to employees of the federal Government and the associate memberships are sold to employees of city, county and state governments and to employees of some nonprofit corporations. There also are a very limited number of honorary memberships. At the end of the tax periods in question Fedco had 366,631 regular members and 308,926 associate members. Only regular members are entitled to vote on corporate matters. The Board of Directors is elected by the regular members at regular meetings held pursuant to the by-laws. Regular membership meetings are held and the proceedings thereof are regularly recorded. Reports are made, proxies counted and validated and business in general is transacted in keeping with usual stockholders' meetings.

Since 1949 Fedco, prior to the issuance and sale of memberships, has obtained a permit from the Commissioner of Corporations authorizing such issuance and sale of memberships to its members. The Commissioner of Corporations, pursuant to two opinions of the Attorney General (24 Ops. Cal. Atty. Gen. 33 [54-74] and 33 Ops. Cal. Atty. Gen. 146 [59-102]) has held that proprietary memberships in California nonprofit corporations, such as Fedco, as "beneficial interests in title to property" (Corp. Code § 25008) *are securities, the issuance and sale of which, like the issuance and sale of stock in a general corporation, require a prior authorizing permit.* No membership has been sold except in pursuance of the permits of the Commissioner of Corporations. Each member at the time of the issuance and sale of the membership

receives a copy of the authorizing permit of the Commissioner of Corporations. Both regular and associate memberships exist for the life of the member and require no renewal, the memberships are non-transferable, except to a surviving spouse. A membership can be revoked for any cause deemed by the Board of Directors as sufficient, however during the years in question only a few memberships were revoked and those were for theft, bad checks or other offensive conduct.

Fedco being a nonprofit corporation, it is not permitted to distribute gains, profits or dividends to its members except upon dissolution or winding up. (See Corp. Code §§ 9200, 9801.) During the years in question, June 30, 1957 through 1964, Fedco opened five stores and paid $387,531.62 in California Corporate income taxes on profits arising out of the operations of the business.

The Franchise Tax Board contends in effect that a nonprofit corporation organized under California law and authorized to engage in business in California cannot generate tax-free equity capital as do the corporations organized under the general corporation law of the state. The sole question then is whether Fedco must pay an income tax on the membership fee collected by it upon the issuance and sale of a membership. The trial judge determined that no income tax was due under the circumstances. We are persuaded that the judgment should be affirmed.

The basic corporation franchise tax statute[2] authorizes the imposition of a tax on income. Proceeds from the sale of stock are exempt from the franchise tax.[3] It is specifically provided in sections 103 and 115 of the Corporations Code[4] that mem-

---

[2]Revenue and Taxation Code, section 23151, provides as follows: "With the exception of financial corporations, every corporation doing business within the limits of this state and not expressly exempted from taxation by the provisions of the Constitution of this state or by this part, shall annually pay to the state, for the privilege of exercising its corporate franchises within this state, *a tax according to or measured by its net income*, to be computed at the rate of 5.5 percent upon the basis of its net income for the next preceding income year. In any event, each such corporation shall pay annually to the state, for the said privilege, a minimum tax of one hundred dollars ($100)." (The rate has been amended from time to time.)

[3]Revenue and Taxation Code, section 24942, provides as follows: "(a) *No gain or loss shall be recognized to a* bank or *corporation on the receipt of money or other property in exchange for stock* (including treasury stock) *of such* bank or *corporation.*

"(b) For basis of property acquired by a bank or corporation in certain exchanges for its stock, see Sections 24552 to 24554, inclusive."

[4]Corporations Code, sections 103 and 115, provide as follows:

"§ 103. *'Shareholder'* or *'stockholder'* or 'holder of shares' means

bers of a non-stock corporation are shareholders or stockholders and that shares of stock include membership in non-stock corporations. The members of Fedco or the membership are the owners. The ownership interest of the members arises solely from the sale of the memberships. The regular members of Fedco have the right to elect the Board of Directors and to vote upon all corporate matters.

The fact that the memberships are not transferable is not of itself or otherwise sufficient to overcome the fundamental basic stock characteristics of the memberships under the code definitions. It is readily apparent that the members for the membership fee received a proprietary interest. In our opinion the transaction is a capital one and it is incorrect to ascertain and declare the fee to be income and taxable as such.

In *Estate of Dare,* 196 Cal. 29, 42 [235 P. 725], the court said with reference to the definition of income: ". . . the ordinary meaning attached to 'income' is that it is *something produced by capital* without impairing that capital and which leaves the property intact, . . ." (Italics added.)

In *Nicholas* v. *Fifteenth Street Inv. Co.* (10th Cir. 1939) 105 F.2d 289 it is stated at page 290: ". . . the power of the Congress to lay and collect taxes *on income* is confined to that which is *actually and essentially income;* and *income,* as thus used, means the *gain derived from capital,* from labor, or from both combined.The taxing power in respect to income cannot by legislative definition be extended beyond that scope. That which is not actually and essentially income cannot by definition be subjected to such a tax." (Italics added.) Income has been defined ". . . as the gain derived from capital, from labor, or from both combined, . . ." *Stratton's Independence* v. *Howbert,* 231 U.S. 399, 415 [58 L.Ed. 285, 292, 34 S.Ct. 136]. In *Doyle* v. *Mitchell Brothers Co.* 247 U.S. 179, 185 [62 L.Ed. 1054, 1059, 38 S.Ct. 467] the court said: "Whatever difficulty there may be about a precise and scientific definition of 'income,' it imports, as used here, something entirely distinct from principal or capital either as a subject of taxation or as a measure of the tax; conveying rather the idea of gain or increase arising from corporate activities."

"When used with respect to the property of a corporation

---

'holder of record of shares' or 'shareholder of record' and *includes a subscriber to shares in cases in which no certificates are outstanding, and a member of a nonstock corporation.'*

"§ 115. *'Shares' and 'shares of stock' include membership in non-stock corporations.*"

or association the term [capital] has a settled meaning; it applies only to the property or means contributed by the stockholders as the fund or basis for the business or enterprise for which the corporation or association was formed." *Bailey* v. *Clark,* 88 U.S. (21 Wall.) 284, 286-287 [22 L.Ed. 651, 652-653]. In *United Grocers, Ltd.* v. *United States,* 186 F.Supp. 724, 729, the term capital was defined as ". . . the money, property or means contributed by stockholders as the fund or basis for the business or enterprise for which the corporation was formed."

Appellant places great if not complete reliance upon what is said by the Ninth Circuit Court of Appeals in *United States* v. *Federal Emp. Distributing Co.* (9th Cir. 1963) 322 F.2d 891 (cert. denied 376 U.S. 951 [11 L.Ed.2d 970, 84 S.Ct. 967]). That court said at page 892: "The issue presented in this case is the same as that presented in *Affiliated Government Emp. Distributing Co.* v. *Commissioner of Int. Rev.* (9th Cir. 1963) 322 F.2d 872. While there are a few factual differences between that case and the instant one, the differences are not substantial and would not justify different results in the two cases. For the reasons stated in *Affiliated,* therefore, we conclude that the fees in this case were not paid in exchange for stock and constituted taxable income to appellee." (Footnote omitted.)

The facts in *Affiliated Government Emp. Distributing Co.* v. *Commissioner of Int. Rev.,* 322 F.2d 872 (cert. denied 376 U.S. 950 [11 L.Ed.2d 970, 84 S.Ct. 967]) are not the same as in the case at bar but the philosophy and reasoning of the court as expressed in *Affiliated* according to appellant would apply to the case at hand. The court said in *Affiliated*:

"For the purpose of this opinion, we shall accept the following commonly given definition of stock quoted in petitioner's brief:

'. . . the interest or right which the owner, who is called the "shareholder" or "stockholder" has in the management of the corporation, and in its surplus profits, and, on a dissolution in all of its assets remaining after the payments of its debts.'

"The fact that memberships in petitioner may, as a matter of form, fall within the purview of this definition does not, of course, control, since in applying the income tax laws we must regard matters of substance and not mere form.

"Analysis of the substance of the relationship between peti-

tioner and its members reveals to us that the fees in the instant case were not received by petitioner in exchange for its stock, but rather were received for the privilege of buying goods at a discount at petitioner's stores. Although the memberships technically had some of the indicia of stock, *i.e.*, the right to vote for the management and the right to share in the assets upon dissolution of the corporation, these facts must be considered in the following context: a merchant-customer relationship existed between petitioner and its members; the fee paid for the privilege of purchasing at the stores was small; members did not share in profits or potential growth of the corporation during its life; membership was not assignable and terminated at death; memberships were subject to revocation for any cause deemed sufficient; refunds of the fee either upon death or resignation were solely within the discretion of the Board of Directors; and no certificate of membership other than a wallet-sized card was issued. Neither does it appear that a conscientious effort was made to inform the members of their rights to vote and share in the assets of the corporation upon liquidation. The applicants were not told at the time of their applications that they had these rights and the rights were not listed on the membership cards. Even assuming that a substantial number of the members knew of their right to vote, we submit that on the basis of the facts outlined above it could not have been reasonably foreseen that the average member would have any desire to exercise the right; it is also difficult to believe, as stated by the Tax Court, 'that the remote possibility of participating in any . . . distribution upon liquidation was a factor of any consequence in relation to the payment of the comparatively small fees here in issue.'

"Further, as noted earlier, the Tax Court emphasized the fact that the fees 'were paid predominantly for the privilege of shopping at petitioner's stores and using its facilities.' Petitioner contends that motive or intent of the purchaser has no relevance to the determination whether 'stock' has been purchased. If no question were raised as to the substance of the interests or rights which allegedly qualified the members as 'stockholders,' we would be inclined to agree with petitioner. Here, however, we feel that the issue is whether the members received any interest of substance in the corporation other than the privilege to buy at discount. In resolving this issue, we feel that the Tax Court was justified in considering

all of the circumstances surrounding the purchase of memberships, including the motives or purposes of the parties to the transaction. In the instant case, we cannot see how either the management or the applicants could realistically have considered the fees paid to have been 'in exchange for stock.'

"We do not hold here that memberships in non-stock corporations cannot fall within the purview of section 1032; nor do we hold that the absence of one or more of the normal indicia of stock considered above would preclude an exclusion under the statute. We merely hold on the facts of this case that the members received in exchange for their fees nothing of substance other than the privilege of buying goods at a discount, that their fees were thus paid solely for direct benefits to be received from petitioner and as such constituted taxable income to petitioner." (Pp. 877-878.) (Footnotes omitted.)

Appellant also relies upon what is said in *Community T.V. Assn. of Havre* v. *United States* (D.Mont. 1962) 203 F.Supp. 270 "While denominated a class of common stock, the only proprietary interest of the Class B stockholders was a distributive share of the capital assets upon liquidation, after Class A stockholders had been paid in full.

"We cannot overlook the oft pronounced rules 'that the incidence of taxation depends upon the substance, not the form, of the transaction', and that the essence of any arrangements must be 'determined not by subtleties of draftsmanship but by their total effect'. 'It is the axiom of tax law that the form of a transaction may not govern its tax consequences where the substance of what was accomplished demands another result'.

"As a matter of substance, it is obvious that the subscribers did not acquire their Class B stock as an investment and did not pay their money for the purpose of acquiring a proprietary or equity interest in the corporation, but solely to enable them to receive the television signal service of the taxpayer corporation." (P. 275.) (Footnotes omitted.)

The receipt of money by a corporation in exchange for its stock has universally been treated as a nontaxable receipt for income tax purposes. That philosophy is codified in Revenue and Taxation Code, section 24942, (see footnote 3) and was practically copied from section 1032 of the Federal Internal Revenue Code.

We have great respect for the opinions of the justices of the Ninth Circuit Court of Appeals, however this court cannot so

lightly pass over or blindfold ourselves to the statutes of this state. We find nothing in the statutes of California which provides for a subjective test, that is, as to whether the state of mind or motive or intent of a member in purchasing a membership in Fedco is to be considered in determining whether the interest acquired constitutes stock under our law. At the very most the criteria of motive and intent are nebulous and are practically impossible of application. The court in *Affiliated* makes mention that "members did not share in profits or potential growth of the corporation during its life." The prohibition against the payment of gains, profits, or dividends during the life of the corporation is expressly imposed by the California law. (See § 9200, Cal. Corp. Code.) It would seem that the inability of Fedco to pay dividends is of little significance. In *Affiliated* it is said, "membership was not assignable and terminated at death." This is expressly permitted under section 9609, Corporations Code. Membership termination upon death of a member is permitted under section 9608, Corporations Code. Mention is made in *Affiliated* that "memberships were subject to revocation for any cause deemed sufficient." This is perfectly proper under the circumstances as evidenced in this case. (See § 9608, Corp. Code.) The court in *Affiliated* also asserted "refunds of the fee either upon death, or resignation were solely within the discretion of the Board of Directors." Article I, section 3 of Fedco's By Laws provides in part: "The holder of any class of membership may, however, upon thirty (30) days written notice, resign his membership and upon request, be refunded the consideration, if any, paid by him for such membership. In the event of the death of the holder of any regular or associate membership, the consideration paid upon the issuance thereof shall, upon request of the deceased member's Executor or Administrator, be paid to said member's estate." Further, that court said "and no certificate of membership other than a wallet-sized card was issued." There is nothing in our law which provides for the dimensions of a share of stock and presumably the certificate was satisfactory as to size and otherwise for the Corporation Commissioner upon the advice of the Attorney General issued permits upon proper applications therefor. In fact a certificate is not even necessary to the ownership of stock. (See *Crane Valley Land Co.* v. *Bank of America*, 182 Cal.App.2d 166, 173 [5 Cal.Rptr. 731]; *Mindenberg* v. *Carmel Film Productions, Inc.* 132 Cal.

App.2d 598, 608, 609 [282 P.2d 1024].) It makes little difference whether the certificate is four inches square or four feet square. The fact that a merchant-customer relationship may exist between Fedco and its members is of no consequence and does not alter the basic fact that a proprietary or stock interest in and to Fedco was acquired by each member upon the payment of $2. The judges in *Affiliated* were concerned that no conscientious effort was made ". . . to inform the members of their rights to vote and share in the assets of the corporation upon liquidation. The applicants were not told at the time of their applications that they had these rights and the rights were not listed on the membership cards. . . ." The fact is that in this case the evidence is that each member of Fedco, at the time he joined, received a copy of the permit issued by the Commissioner of Corporations, that permit apprised each member in plain language of the classes of membership, it explained in detail the voting rights, it explained the right of the member to the assets on liquidation and it detailed the assets and liabilities of Fedco at the time of the sale of the membership. The court went on further to suggest that the "average member" would not have any desire to exercise the right to vote. The law is concerned with the existence of the right to vote and not some speculative desire or lack of desire to exercise the right.

We are persuaded that the state of mind of either management or the applicant can have no logical bearing on whether the proprietary interests obtained constitute stock under the circumstances and the law of this state. If the subjective intent of the individual who acquires a proprietary interest in a corporation determines the status of the payment to the corporation as capital or income (as held in *Affiliated*) then undoubtedly the sale of most .proprietary interests in nonprofit corporations would be regarded as income, for seldom it may be said does one buy a membership in a nonprofit corporation for an investment motive, as for example a country club, a service club or a duck club. In short, the federal court decided the case before it as though the sections of the Corporations Code of California did not exist.

Appellant argues in effect that the Corporations Code is only concerned with the regulation of corporations and not with the raising or payment of taxes and that in any event the provisions of the Revenue and Taxation Code govern "regardless of the provisions of the Corporations Code." The rule, however, is that the separation of the various statutes

into codes is for convenience only and the codes are to be read together and "regarded as blending into each other thereby forming but a single statute." (*In re Porterfield,* 28 Cal.2d 91, 100 [168 P.2d 706, 167 A.L.R. 675]; *Armenta v. Churchill,* 42 Cal.2d 448, 455 [267 P.2d 303]; *Pesce v. Department of Alcoholic Beverage Control,* 51 Cal.2d 310, 312 [333 P.2d 15]; *People v. Vassar,* 207 Cal.App.2d 318, 322-323 [24 Cal.Rptr. 481]; *Ryder v. City of Los Altos,* 125 Cal.App.2d 209, 211 [270 P.2d 532].) In *Bohn v. Mayor & City Council of Fontana,* 121 Cal.App.2d 637 at pp. 640-641 [263 P.2d 836], it is appropriately said: "It is well settled, as stated in *In re Porterfield,* 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675], where provisions in the Labor Code and the Business and Professions Code were being considered, that 'The code separation is for convenience only. It is a well-recognized rule that for the purpose of statutory construction, the codes are to be regarded as blending into each other and constituting but a single statute.' (Citing cases.) See, also, *People v. Darby,* 114 Cal.App. 2d 412 [250 P.2d 743], where it is said: 'The two codes (the Education Code and Government Code) are not antagonistic laws, but both are parts of the state's jurisprudence and must be harmonized and effect given to every section. . . . What the legislature says is the law, wheresoever it be found.' See, also, *Guardianship of Thrasher,* 105 Cal.App.2d 768 [234 P.2d 230]; and *Southern Cal. Jockey Club, Inc. v. California Horse Racing Board,* 36 Cal.2d 167 [223 P.2d 1], where it was held (quoting from the syllabus) that 'The codification of the horse-racing law (placing it in the Business and Professions Code) was presumably not intended as a change in the law.' In *Webster v. Zevin,* 77 Cal.App.2d 855 [176 P.2d 960], it was said: 'Transplanting the section to the Vehicle Code without change in its terms furnishes no ground for an interpretation different from what would manifestly be given it as a Civil Code provision.' "

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 5, 1968.