[Civ. No. 37537. Second Dist., Div. Four. Aug. 23, 1971.]

Estate of MARY TERRESSA GILL
HOUSTON I. FLOURNOY, as State Controller, Plaintiff and Appellant, v.
JANE HAGNY, Defendant and Respondent.

COUNSEL

Myron Siedorf, Walter H. Miller and James R. Birnberg for Plaintiff and Appellant.

Wehrle & Anderson and Trent G. Anderson, Jr., for Defendant and Respondent.

## OPINION

**DUNN, J.** — This is an appeal by the State Controller from a judgment refusing to impose an inheritance tax upon an *inter vivos* transfer of real property by Mary Terressa Gill, deceased.

Mrs. Gill died in 1966. On June 26, 1969 Jane Hagny, decedent's daughter, filed a petition for determination of inheritance tax due on account of the transfer of a house by decedent to petitioner in 1951.[1] (Rev. & Tax. Code, § 14551.) The court appointed an inheritance tax appraiser as referee. (Rev. & Tax. Code, § 14552.) Following a hearing on the petition, the referee filed a report appraising the property at $62,000 at the date of decedent's death. The report further determined that the transfer had been

---

[1] Petitioner also requested a determination as to other *inter vivos* transfers of property to her by the decedent. These transfers, and the ruling thereon, are not relevant to the issues on this appeal.

made without valuable consideration, and hence was taxable under sections 13641 to 13648, inclusive, of the Revenue and Taxation Code.

Petitioner filed objections to the report (Rev. & Tax. Code, § 14510) contending, inter alia, that the decedent neither occupied the property nor retained any interest therein at the time of her death.

At the hearing on the objections (Rev. & Tax. Code, § 14511), evidence was produced showing: In 1935 petitioner and her husband, William Hagny, decided to have a house built in west Los Angeles. Because of their youth and limited credit, they were unable to arrange a loan. Therefore, Mrs. Gill, petitioner's mother, offered to finance the project. She purchased a lot and obtained a bank loan for construction of the house. The Hagnys engaged an architect who designed a two-story, three-bedroom house according to their specifications. The house, located at 10330 Glenbarr Avenue, was completed in August 1937, and the Hagnys took possession. They immediately invited Mrs. Gill to move in, and she did so, occupying an upstairs bedroom. Thereafter, she resided with the Hagnys at 10330 Glenbarr Avenue until 1966. She was then 86 years old; her health was failing, and her daughter was unable adequately to care for her. Accordingly, in June 1966 she went to a convalarium, where she remained until she died the following month. On the death certificate her last usual residence was shown as 10330 Glenbarr Avenue.

Mrs. Gill often stated that the house was that of Jane and William Hagny, and that she wanted Jane to receive the property. In November 1945 she executed a deed placing the title in joint tenancy with her daughter. In December 1951 she completed the transfer by a deed conveying her interest to Jane.[2] On this occasion she stated that she had accomplished what she always had intended, i.e., that Jane should "have the home in her name as her property."

Mrs. Gill paid the property taxes until 1955, when she completed payments on the loan. Thereafter, the Hagnys paid the taxes. From the time the house was completed in 1937 until Mrs. Gill's death in 1966, the Hagnys paid for repairs and maintenance, as well as landscaping and gardening. They also paid for utilities and food, including food for Mrs. Gill. There never was an agreement, either oral or written, between the Hagnys and Mrs. Gill concerning the sharing of these household expenses. All of the furniture belonged to the Hagnys; Mrs. Gill did not have any furniture of her own in the house.

---

[2]Following execution of the second deed, a California gift tax return was filed. The Inheritance Tax Department determined that no tax was due.

Findings of fact and conclusions of law were signed and filed. The court found the following facts: Mrs. Gill deeded the property to her daughter as a gift; except for temporary absences while hospitalized or on vacation, she continuously resided in a portion of the house from August 1937 until her death in July 1966; she did not thereby retain possession or enjoyment of an interest in the property until her death, nor did she impliedly reserve an interest therein for life. From these findings the court concluded that neither the residence, nor any interest therein, passed to Jane Hagny by reason of the death of Mrs. Gill.

Judgment was entered holding that "the transfer by . . . Gill to her daughter . . . Hagny of the premises . . . in December 1951, was a complete gift and was not a transfer subject to any inheritance tax." The State Controller appeals from the judgment.[3] (Rev. & Tax. Code, §§ 14671, 14672; Code Civ. Proc., § 904.1, subd. (a).)

It was appellant's position in the trial court that taxability of the transfer was governed solely by section 13644, Revenue and Taxation Code. The judgment apparently was based on that statute, which provides: "A transfer conforming to Section 13641 [a transfer made without full and adequate consideration in money or money's worth] and under which the transferor expressly or impliedly reserves for his life an income or interest in the property transferred is a transfer subject to [an inheritance tax]. Such a reservation shall be conclusively presumed where the transferor retains the possession or enjoyment of the income or interest in the property transferred until his death."

Appellant contends that, because the decedent continuously resided in a portion of the house after the transfer and until her death, she retained possession or enjoyment of an interest in the property; therefore, he argues, the conclusive presumption applies as a matter of law to make the transfer taxable. In effect, appellant contends that there is no evidence to support the trial court's findings that (1) decedent did not *retain* possession or enjoyment thus making the conclusive presumption inapplicable, and (2) that decedent did not reserve for her life any interest in the property. We disagree.

The presumption was added to section 13644 by amendment in 1953. (Stats. 1953, ch. 1313, § 1, p. 2871.) The amendatory act specifically provided that it was "effective as to all transfers made before or after the effective date hereof [September 9, 1953]." (*Id.*, § 7, p. 2872.)

---

[3]The judgment also determined that an inheritance tax was due because of certain other *inter vivos* transfers made by the decedent. (See fn. 1.) No challenge is made to that portion of the judgment.

We first answer an assertion advanced by respondent that, even if appellant's interpretation of the phrase "possession or enjoyment" is correct, the prohibition against retrospective application of the laws precludes application of the presumption to the transfer of the residence, which was made in 1951.

■ The retrospective application of a statute is unconstitutional only if it deprives a person of a vested right, or impairs the obligation of a contract. (*Rosefield Packing Co.* v. *Superior Court* (1935) 4 Cal.2d 120, 122 [47 P.2d 716]; *McCann* v. *Jordan* (1933) 218 Cal. 577, 579 [24 P.2d 457]; *Rosenblatt* v. *Cal. St. Bd. of Pharmacy* (1945) 69 Cal.App.2d 69, 72 [158 P.2d 199]; 11 Cal.Jur.2d, Constitutional Law, § 223, pp. 640-641.) If it does neither of these things, it is not objectionable on the ground that it applies to past transactions. (*Pignaz* v. *Burnett* (1897) 119 Cal. 157, 160 [51 P. 48].)

The first sentence of section 13644 was enacted in 1943. (Stats. 1943, ch. 658, § 1, p. 2302, eff. July 1, 1945.) Hence, several years before the final transfer was made in the instant case, an inheritance tax was imposed on gift transfers of property in which the transferor expressly or impliedly reserved a life income or interest. The amendment adding the conclusive presumption merely provided a means of establishing that a transferor had reserved an interest of the type which would render the transfer taxable.

■ It is true that a conclusive presumption (Evid. Code, §§ 600, subd. (a), 601, 620) has been characterized as a rule of substantive law rather than an evidentiary rule. (*Kusior* v. *Silver* (1960) 54 Cal.2d 603, 619 [7 Cal.Rptr. 129, 354 P.2d 657]; *Wright* v. *Salzberger* (1932) 121 Cal.App.2d 639, 643 [9 P.2d 860]; Witkin, Cal. Evidence (2d ed. 1966) p. 256, § 296.) However, such a distinction between substance and procedure is not helpful in determining whether a statutory amendment constitutionally may be given retrospective application; rather, it is the effect of the amendment which is decisive of the question. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 394 [182 P.2d 159].)

■ The 1953 amendment of section 13644 did not impose a tax on transactions which were not taxable when they occurred (cf. *Hunt* v. *Wicht* (1917) 174 Cal. 205, 207-210 [162 P. 639]). Moreover, it did not impair the validity of transfers made before its enactment, nor did it deprive either the transferor or transferee of any vested right. It follows that the conclusive presumption set forth in the amendment may constitutionally be applied even though the transfer was made before the presumption was enacted.

■ We turn now to the question whether the presumption is operative

under the facts of this case. By the terms of section 13644, it is conclusively presumed that a transferor has reserved a life interest in the property, thereby rendering the transfer taxable, if he has *retained* "possession or enjoyment of the income or interest" in the property until his death. Hence, the issue is whether Mrs. Gill's occupancy of a portion of the house after the transfer and until her death constituted, as a matter of law, retention of possession or enjoyment of the property within the meaning of the statute.

■■ The California inheritance tax is imposed by reason of the beneficial succession to property upon the death of another. (*Kirkwood* v. *Bank of America* (1954) 43 Cal.2d 333, 338-339 [273 P.2d 532].) The taxability of an *inter vivos* transfer (Rev. & Tax. Code, §§ 13641-13648) is determined by the restrictions on the enjoyment and possession of the property at the death of transferor. (*Estate of Thurston* (1950) 36 Cal.2d 207, 211 [223 P.2d 12]; *Estate of Sisk* (1969) 269 Cal.App.2d 823, 835 [75 Cal.Rptr. 549].) In this regard the substance rather than the form of the transfer controls (*Estate of Stevens* (1958) 163 Cal.App.2d 255, 268 [329 P.2d 337]), and a realistic viewpoint governs (*Estate of Craycroft* (1961) 191 Cal.App.2d 436, 443 [12 Cal.Rptr. 552]).

As observed in *Estate of Thurston, supra* (36 Cal.2d at pp. 210 and 211): " 'The early statutes taxing property passing by will or inheritance were followed by resort to various means for avoiding subjection to the tax. Among the devices most simple and commonly resorted to were gifts in contemplation of death, and transfers, in trust or otherwise, whereby the transferor reserved to himself the life use or income for life.' . . . Revenue and Taxation Code, sections 13641-13648, accordingly provide for the taxation of specified *inter vivos* transfers by which the owner of property retains such an interest therein or imposes such restrictions upon the use thereof that for tax purposes he is regarded as the owner of the property at his death and his transfer thereof as a testamentary disposition. 'The statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property. It also taxes *inter vivos* transfers that are too much akin to testamentary dispositions not to be subjected to the same excise.' . . . The tax is imposed on the *inter vivos* transfer but its collection is postponed until the death of the transferor . . . . *The tax is not imposed on transfers not in contemplation of death to transferees whose interest in and possession or enjoyment of the property are not affected by whether the transferor lives or dies.*" (Italics added.)

■ Tested by these standards, it seems obvious that Mrs. Gill's continued occupancy of a portion of the house did not, as a matter of law, compel the trial court to hold the transfer thereof taxable upon her death.

Under the evidence, the trial court was free to infer and conclude that the transferee, Jane Hagny, enjoyed the full incidents of absolute ownership of the property long before the death of Mrs. Gill. The 1951 deed vested in her the fee simple title to the residence. Thereafter, it was hers to do with as she wished. In the language of the *Thurston* case, her possession and enjoyment of the property were not affected by whether Mrs. Gill lived or died. The latter did not reserve any enforceable right to the property; her occupancy following the transfer was possible only because of her daughter's implied invitation, extended out of affection and a sense of filial duty, and not because she retained either possession or enjoyment or reserved any interest in the property.

A like result has been reached in several federal cases which held that where a transferor until his death occupies the property jointly with the transferee, he does not thereby retain "possession or enjoyment" within the meaning of 26 United States Code Annotated, section 2036(a)(1)[4] so as to require inclusion of the value of the transferred property in his gross estate.[5] (*Diehl* v. *United States* (W.D.Tenn. 1967) 21 A.F.T.R.2d 1607; *Union Planters National Bank* v. *United States* (6th Cir. 1966) 361 F.2d 662; *Estate of Gutchess* (1966) 46 T.Ct. 554; *Stephenson* v. *United States* (W.D.Va. 1965) 238 F.Supp. 660.) Typical of the rationale of these cases is the following language in *Stephenson* v. *United States, supra,* at pages 664, 667: "Decedent Stephenson had no right to possess or to enjoy the house. The transfer was out and out and was not affected by his life or death. . . . [T]he mere fact that the decedent lived in the house after he transferred it to his wife is neither sufficient evidence to infer an agreement nor is it sufficient to satisfy the requirement of retention of possession or enjoyment as set out by Section 2036."[6]

We conclude that Mrs. Gill's continued occupancy of a portion of the house following the transfer was not conclusive proof that she re-

---

[4]Section 2036: "(a) The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—(1) the possession or enjoyment of, or the right to the income from, the property. . . ."

[5]The result is otherwise where the transferor retains possession of the property to the exclusion of the transferee. (*Guynn* v. *United States* (4th Cir. 1971) 437 F.2d 1148; *Estate of Linderme* (1969) 52 T.Ct. 305.)

[6]Federal decisions interpreting section 2036 are not binding upon us. Nevertheless, they furnish a guide in the construction of section 13644, since both the federal and the state statute contain the phrase "possession or enjoyment," and other material provisions of the two statutes are substantially identical. (See *Douglas* v. *State of California* (1942) 48 Cal.App.2d 835, 838 [120 P.2d 927].)

tained "possession or enjoyment of the income or interest in the property transferred" as contemplated by section 13644. Rather, a question of fact was presented and the trial court determined the issue contrary to appellant's position. That court held the transfer not subject to an inheritance tax.

The judgment is affirmed.

Kingsley, J., concurred.

**FILES, P. J.**—I would reverse the judgment.

The decedent was the sole owner of the house when she moved in and despite the subsequent conveyances her occupancy continued without change until her death. I think this is the kind of situation which the Legislature intended to reach by adding the conclusive presumption to section 13644 in 1953. Thus it was not necessary for the Controller to prove that the decedent in fact owned any legal interest or any legally enforceable right or had made any agreement with the transferee.

A petition for a rehearing was denied September 10, 1971. Files, P. J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied October 21, 1971.